# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

KIMBERLY H.,[1]

       Plaintiff,

  v.

**ANDREW M. SAUL,** Commissioner of
Social Security,

       Defendant.

Case No. 3:20-cv-00415-IM

**OPINION AND ORDER**

H. Peter Evans, Evans & Evans, PC, 520 SW Sixth Avenue, Suite 1050, Portland, OR 97204.
Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney,
United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204;
Summer Stinson, Special Assistant United States Attorney, Office of General Counsel, Social
Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104.
Attorneys for Defendant.

**IMMERGUT, District Judge**

      Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of the

Social Security Administration's final decision denying her application for Disability Insurance

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

Benefits ("DIB"). For the following reasons, the Administrative Law Judge's ("ALJ") decision is reversed and remanded for further proceedings.

Specifically, the ALJ should explicitly address medical records and Plaintiff's symptom testimony regarding her right middle trigger finger condition and make additional credibility findings. If appropriate, the ALJ should reformulate the RFC and proceed through subsequent steps in the disability determination. This may include new Vocational Expert ("VE") and other testimony.

The Court finds no harmful error with respect to the other issues raised in this appeal.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quotation marks omitted) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation marks omitted) (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495

F.3d 625, 630 (9th Cir. 2007) (quotation marks omitted) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.; see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born in 1962. AR 210. She has past relevant work as a security guard and data entry clerk, AR 29, 68-69, and has a college education, AR 250. Plaintiff filed an application for DIB on March 27, 2016, alleging disability since February 1, 2016. AR 204, 200. She was 53 years old on her alleged onset date. *See* AR 210. Her date last insured is December 31, 2021. AR 219.

Plaintiff alleges disability due to morbid obesity, left ankle tendonitis, degenerative arthritis of the left foot, depression, left carpal tunnel syndrome post release surgery, right carpal tunnel syndrome post release surgery, right little trigger finger, and right middle trigger finger. AR 17-18, 593.

Plaintiff's application was denied initially and upon reconsideration. AR 109-111 (July 19, 2016 initial denial), 114 (Plaintiff's August 1, 2016 request for reconsideration), 121-123 (October 19, 2016 denial on reconsideration). Plaintiff requested a hearing. AR 124-125. Plaintiff appeared unrepresented at an administrative hearing on May 3, 2018 before ALJ Vadim Mozyrsky. AR 39. Plaintiff asked to postpone the hearing to obtain a representative. AR 43. Plaintiff's request for postponement was granted and she appeared with counsel at an administrative hearing on October 18, 2018 before the ALJ. AR 49.

On December 31, 2018, the ALJ issued a decision finding Plaintiff not disabled. AR 12-14. Plaintiff timely requested review of the ALJ decision on February 25, 2019. AR 197-198. On

PAGE 3 – OPINION AND ORDER

January 13, 2020, the Appeals Council denied the request for review, making the ALJ's

December 31, 2018 decision the Commissioner's final administrative decision in this case. AR

1-3.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
such work, she is not disabled within the meaning of the Act. 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's
regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
impairment or combination of impairments is "severe" if it significantly
limits the claimant's physical or mental ability to do basic work activities.
20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
this impairment must have lasted or be expected to last for a continuous
period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*Id.; see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1099, 1100 *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform

other work existing in significant numbers in the national economy, the claimant is not disabled.

*Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021. AR 17.

At step one of the sequential evaluation process, the ALJ determined that Plaintiff did not engage in substantial gainful activity since February 1, 2016, the alleged onset date. *Id*. The ALJ found at step two that Plaintiff has the following severe impairments: morbid obesity, left ankle tendonitis, degenerative arthritis of the left foot, and depression. *Id*. The ALJ concluded at step three that although these impairments constituted severe impairments under 20 C.F.R. § 404.1520(c), the impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18.

The ALJ found at step four that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except: lifting and carrying is limited to twenty pounds occasionally and ten pounds frequently; sitting is limited to six hours in an eight-hour day; standing and walking is limited to six hours in an eight-hour day; pushing and pulling is limited as much as lifting and carrying; she can climb ramps and stairs frequently; she can climb ladders and scaffolds occasionally; she is limited to completing tasks independently, without the need for coordinated efforts with coworkers; and interaction with the public is limited to occasionally. AR 20. Additionally, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record. AR 21.

The ALJ found that Plaintiff is capable of performing past relevant work as a: (1) security guard, DOT 372.667-034, classified as a light exertional level, semiskilled work; and (2) data

entry clerk, DOT 203.582-054, classified as a sedentary exertional level, semiskilled work. AR 29-30. Finally, the ALJ found that Plaintiff has not been under a disability from February 1, 2016, through the date of the decision. AR 30.

## DISCUSSION

### A.  ALJ's Failure to Consider Opinion of Kim Webster, M.D., was Harmless.

#### 1.  Background

On June 21, 2016, Kim Webster, M.D., performed a comprehensive musculoskeletal examination of Plaintiff. AR 461-66. Dr. Webster opined that Plaintiff should be limited to standing and walking for two hours, lifting and carrying should be limited to ten pounds occasionally and ten pounds frequently, and it would be very difficult for Plaintiff to bend, stoop, crouch, kneel, balance, or crawl. AR 465. Dr. Webster found that Plaintiff could perform all but "the very finest manipulations," such as threading a needle. AR 25-27 (citing AR 461-66); *see also* AR 465 (Dr. Webster diagnoses stating "[i]ntermittent tremor in her hands. She filled out the questionnaire and looking at it, there is minimal evidence that she has a tremor. It is well written and the penmanship is excellent."); AR 466 (noting that "[a]lthough she did have a fine tremor, she was able to take a paper wrapper around a band-aid and peel it apart with minimal problem"). The ALJ gave the opinion of Dr. Webster great weight and found that the opinion was based upon objective testing and observations made during the course of the examination. AR 25-27.

At the hearing, the ALJ asked the VE about different hypothetical individuals, including one "limited to a range of sedentary, lifting ten pounds occasionally, less than ten pounds frequently, carrying the same, and standing and walking, two hours total." AR 71-72. The VE testified that this individual "would be able to do the security job as performed, not as per the DOT. And the data entry job, as per the DOT, and performed." AR 72.

In the RFC, the ALJ limited Plaintiff in relevant part as follows: "sedentary work . . . except lifting twenty pounds occasionally, ten pounds frequently; carrying twenty pounds occasionally, ten pounds frequently; sitting would be limited to six hours of an eight-hour day; standing and walking, six hours out of an eight-hour day; pushing and pulling as much as lifting and carrying; the individual would be limited to climbing ramps and stairs at the frequent level, ladders and scaffolds at the occasional level." AR 20.

### 2. Analysis

Plaintiff argues the ALJ erred by not giving any specific and legitimate reasons to disregard the opinion of this examining doctor, *see Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), and then by failing to incorporate Dr. Webster's limitations into Plaintiff's RFC, *see* AR 20, 25-27. Plaintiff argues that the RFC omits Dr. Webster's limitations regarding walking and standing; lifting and carrying; the inability to bend, stoop, crouch, kneel, balance, or crawl; and the inability to do very fine manipulation. *See* ECF 13 at 6; *compare* AR 20 (RFC) *with* AR 465 (Dr. Webster's assessment). Plaintiff argues that this was harmful error because Dr. Webster's opinion limits Plaintiff to essentially a sedentary RFC, so she could be found disabled if her past work is excluded. ECF 13 at 6-7. Defendant argues that the ALJ did not reject Dr. Webster's opinion. ECF 16 at 9.

"An ALJ errs when he fails to explain why he did not account for a portion of a physician's opinion in formulating the claimant's RFC." *Shelley V. v. Saul*, No. 6:18-cv-01760-SB, 2020 WL 1131489, at *8 (D. Or. Mar. 9, 2020) (citing *Harris v. Berryhill*, No. C17-1506 BHS, 2018 WL 3343219, at *11 (W.D. Wash. July 9, 2018)). An ALJ generally should give "more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." 20 C.F.R. § 404.1527(c)(1) (for claims

filed before March 27, 2017). It appears that the ALJ did in fact disregard aspects of Dr. Webster's opinion without comment. Accordingly, he erred.

However, the error was harmless because this Court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Here, Plaintiff argues that the ALJ's error was harmful because Dr. Webster's opinion, if incorporated into the RFC, would limit Plaintiff to "essentially a sedentary RFC." ECF 13 at 7. Plaintiff argues that such an RFC, including limitations of two hours for standing and walking and a maximum of ten pounds on occasional lifting and carrying, would preclude Plaintiff's past relevant work as a security guard as it is *generally* performed. *Id.* Plaintiff does not argue that she could not perform her security guard job as *actually performed*, which she also has the burden to show. *See* SSR 96-8p, 1996 WL 374184, at *3-4 (July 2, 1996).

Indeed, the ALJ asked the VE a hypothetical consistent with Dr. Webster's limitations— "limited to a range of sedentary, lifting ten pounds occasionally, less than ten pounds frequently, carrying the same, and standing and walking, two hours total"—and the VE responded that such an individual "would be able to do the security job *as performed*, not as per the DOT. And the data entry job, as per the DOT, and performed." AR 71-72 (emphasis added); *see also* AR 266 (Plaintiff's self-reported description of security guard job, stating that she walks thirty minutes, stands fifteen minutes, and sits the "rest of [the] time"). Because even crediting Dr. Webster's opinion, Plaintiff can still perform her past relevant work, the error is harmless.

With respect to the fine manipulation limitation omitted from the RFC, this inclusion similarly could not affect the ultimate disability determination. Plaintiff argues that Dr. Webster's opinion that Plaintiff could not do very fine manipulation would preclude Plaintiff's

work as a data entry clerk, which requires "constant fingering." ECF 13 at 7 (citing DOT

203.582-054). But that role does not require "very fine, delicate work." *Schepps v. Comm'r of

Soc. Sec.*, No. 2:12-CV-0979-CMK, 2013 WL 5348129, at *4 (E.D. Cal. Sept. 23, 2013)

(evaluating same DOT job); *see also* DOT 203.582-054, 1991 WL 671700 (requiring

"[c]onstant[ ]" fingering but only "Finger Dexterity: Level 3—Middle 1/3 of the Population").

Dr. Webster noted that Plaintiff's penmanship was excellent and found that she could perform all

but "the very finest manipulations," such as threading a needle. AR 465-66. Such a minor

limitation could not preclude performance of the data entry clerk job.

Similarly, including Dr. Webster's limitations on Plaintiff's ability to bend, stoop,

crouch, kneel, balance, or crawl would not alter the disability determination. Plaintiff stated in

her work history report that neither her data clerk nor security guard jobs, as performed, required

any climbing, reaching, kneeling, crouching, or crawling. *See* AR 266 (security guard report);

AR 267 (data clerk report). Plaintiff mentioned thirty minutes of stooping in the data clerk job,

but no time stooping in the security guard job. AR 266-67. The DOT listings for these jobs state

that zero stooping, crouching, kneeling, balancing, or crawling is present. DOT 203.582-054,

1991 WL 671700 (data entry clerk); DOT 372.667-034, 1991 WL 673100 (guard, security).[2]

The ALJ's error did not affect the ultimate disability determination because Plaintiff

would have still been found not disabled even if Dr. Webster's opinion had been incorporated

into the RFC. Presented with the same record and testimony from a VE, no reasonable ALJ could

---

[2] Neither the job information forms provided to and filled out by Plaintiff nor the DOT listings mention "bending" specifically, which suggests difficulty with that activity is not relevant or is adequately addressed by the other activities. *See* AR 266-67; DOT 203.582-054 (data entry clerk); DOT 372.667-034 (guard, security).

have come to a different disability determination. Therefore, this Court determines that the ALJ's

failure to include Dr. Webster's opinion in the RFC, though erroneous, was not a harmful error.

**B. ALJ's Interpretation of Opinion of Scott Kaper, Ph.D., was Reasonable and Supported by Substantial Evidence.**

On July 19, 2016, Scott Kaper, Ph.D., stated that Plaintiff was "moderately limited" in

her ability to interact appropriately with the general public and the "ability to get along with

coworkers or peers without distracting them or exhibiting behavioral extremes." AR 86. He

found that she was "not significantly limited" in her ability to ask simple questions, request

assistance, accept instructions, or respond appropriately to supervisor criticism. *Id*. Dr. Kaper

opined that Plaintiff needs to have minimal contact with coworkers/public due to distractions.

AR 87. In the decision, the ALJ noted this limitation assessed by Dr. Kaper and gave his opinion

great weight. AR 28. The ALJ found that the opinion was well supported by explanation and by

the medical evidence. *Id*. The ALJ included in the RFC that Plaintiff "would be limited to

complete tasks independently, without the need for coordinated efforts with coworkers," and that

"interaction with the public would be limited to the occasional level." AR 20.[3]

Plaintiff argues that the ALJ failed to incorporate Dr. Kaper's opinion as part of the RFC.

The parties dispute whether "minimal," the word used by Dr. Kaper, AR 87, is the same as

"occasional," the word used by the ALJ, AR 20. Plaintiff also suggests that "minimal" is

synonymous with "superficial."[4] ECF 13 at 8; ECF 17 at 2. Neither party provides any authority

---

[3] The ALJ also gave great weight to the October 14, 2016 opinion of Dr. Arthur Lewy, Ph.D. AR 28; *see also* AR 101. Dr. Lewy similarly found that Plaintiff had social limitations. He explained that Plaintiff "can manage routine contacts with the public and coworkers." AR 101.

[4] Plaintiff focuses on the word "superficial" because the ALJ included it in a single hypothetical question to the VE. The ALJ asked about an individual "limited to no contact with the general—or superficial contact with the general public, passing people in the hallways would

for their position on the relative meanings of these words. *See* ECF 13 at 8-9; ECF 16 at 9.
Plaintiff argues that the amount of interaction with the public and coworkers required by her
security job is consistent with more than a minimal amount of contact during a workday, and that
based on Dr. Kaper's opinion, Plaintiff should be precluded from her security guard job as both
actually and generally performed. AR 13 at 8.

      This Court finds that the ALJ's use of the word "occasional" was reasonable, supported
by substantial evidence, and did in fact incorporate Dr. Kaper's opinion into the RFC. The ALJ's
findings should be upheld if supported by inferences reasonably drawn from the record. *Batson*,
359 F.3d at 1193. Dr. Kaper's sparse opinion does not suggest, as Plaintiff contends, that
Plaintiff was limited to "superficial contact with the general public." ECF 13 at 8, 18; *cf. Norris
v. Colvin*, 160 F. Supp. 3d 1251, 1267 (E.D. Wash. 2016) (finding, where medical opinions
stated that plaintiff was limited to "intermittent, casual contact with the public and coworkers,"
that RFC incorporated those limitations by specifying "superficial contact with the public" and
"should work independently and not in coordination with other co-workers"). Rather, Dr. Kaper
found that Plaintiff was "moderately limited" in her "ability to interact appropriately with the
general public" and "moderately limited" in her "ability to get along with coworkers or peers."
AR 86-87. Dr. Kaper further found that Plaintiff was "not significantly limited" in her ability to
ask simple questions, request assistance, accept instructions, or respond appropriately to
supervisor criticism. AR 86.

      The RFC incorporates the limitations recognized by Dr. Kaper by limiting Plaintiff to
"occasional" interaction with the public and to working "independently, without the need for

---

be okay, but no direct contact as part of the job requirements." AR 72. The VE responded that
such an individual would be able to perform the data entry job, not the security job. *Id*.

coordinated efforts with coworkers." AR 20; *see also Johnson v. Colvin*, 949 F. Supp. 2d 1025,

1039 (S.D. Cal. 2013) (noting that ALJ's RFC finding incorporated doctor's opinion that

plaintiff was "moderately limited in the ability to interact appropriately with the general public"

by limiting plaintiff to jobs requiring "no more than occasional contact with the public"

(alterations and quotation marks omitted)); *Roberts v. Colvin*, No. 3:13-cv-00442-MC, 2014 WL

4160243, at *6 (D. Or. Aug. 19, 2014) (rejecting plaintiff's criticism of ALJ's use of the term

"poor" rather than doctor's word, "slight," because it was not unreasonable and noting that "both

terms convey the same general meaning"). Indeed, a reasonable inference drawn from the record

is that the ALJ relied more on Dr. Kaper's assessment than on Dr. Lewy's assessment: Dr. Lewy

concluded that Plaintiff had social limitations but "can manage *routine* contacts with the public

and coworkers." AR 101 (emphasis added).

      The limitations imposed in the RFC are sufficiently similar to those opined by Dr. Kaper.

*See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (finding RFC limitations

"entirely consistent" with treating doctor's); *Batson*, 359 F.3d at 1196 ("When evidence

reasonably supports . . . the ALJ's decision, we may not substitute our judgment for that of the

ALJ."). And Plaintiff's prior security job as performed aligns with these limitations. Plaintiff

testified that in this role, she "only worked the weekends, and nights," so she "had very limited

contact" with the public—about ten to fifteen people during her "day," rather than "up to 50"

during the daytime business hours. AR 71.

      Plaintiff argues that the ALJ did not, while the VE testified, ask Plaintiff explicitly about

her time spent on the phone at the security guard job, and that this phone activity also exceeds

Dr. Kaper's stated limitations. ECF 13 at 8; *see also* AR 57-58 (Plaintiff stating at the hearing

that she called people if there was an emergency in the mill, got calls from employees who were

PAGE 13 – OPINION AND ORDER

sick, and was given a call list by her supervisor to call employees), 266 (Plaintiff stating that she

"answered phones" in Work History Report). Dr. Kaper did not explicitly mention phones, AR

86-87, and Plaintiff did not provide testimony on how frequently telephonic interactions

occurred, AR 57-58, 266. Dr. Kaper also found that Plaintiff was "not significantly limited" in

her ability to ask simple questions, request assistance, accept instructions, or respond

appropriately to supervisor criticism. AR 86. Plaintiff's testimony regarding phone use, including

receiving call list instructions from her supervisor, being called by sick employees, and

requesting assistance in the event of an emergency does not exceed Dr. Kaper's limitations.[5] The

ALJ's interpretation of Dr. Kaper's opinion was reasonable and supported by substantial

evidence, and Dr. Kaper's stated limitations were incorporated into the RFC.

## C. ALJ Erred by Not Considering Post-January 2017 Right Middle Trigger Finger Medical Records or Plaintiff's Hearing Testimony Regarding that Condition.

Plaintiff argues that the ALJ did not properly incorporate into the RFC her limitations due

to impairment of trigger fingers on her right dominant hand. ECF 13 at 9-13; ECF 17 at 2-3.

At step two, the ALJ concluded that the right hand trigger finger issues did not cause any

significant limitations and were not severe because of an effective January 2017 injection

treatment, AR 18, and the ALJ later did not include manipulative limitations in the RFC, *see* AR

---

[5] The ALJ did ask Plaintiff during the hearing about a hypothetical job as a telephone operator, in which she would "have to be nice on the phone" and answer and transfer calls for eight hours a day, five days a week. AR 58-59. Plaintiff first replied that her hand and memory (rather than any social issues) would preclude her from this job. AR 59. After the ALJ replied that these issues could be accounted for, Plaintiff answered: "If I were able to get through the training" and "if I was [ ] in a room by myself doing that, and, you know, I was able to use my left hand, and things were right there for me, I would probably be able to do it for a while"—at least an hour. AR 59-60. This testimony suggests that phone interaction does not present similar difficulties to Plaintiff as in-person contact. *See also* AR 260, 262 (Plaintiff stating she regularly interacts via phone and text socially but did not like going outside). It also further undercuts Plaintiff's contention in this briefing that Plaintiff was limited to "superficial" contact with the public. ECF 13 at 8.

20, 27-28. Plaintiff argues that the ALJ disregarded medical records from after the January 2017 treatment and did not properly evaluate and incorporate into the RFC the October 2018 opinion of Dr. Kretzler, Plaintiff's treating physician for hand issues. *See* AR 13 at 12-13; ECF 17 at 2-3. She also argues that the ALJ improperly rejected her October 2018 hearing testimony regarding her right middle trigger finger. *See* ECF 13 at 16; ECF 17 at 5. Specifically, Plaintiff raises her hearing testimony that she is unable to grip the steering wheel for driving; she is unable to use her right hand for tasks such as putting dishes into the dishwasher; and if she accidentally makes a fist, her middle finger will lock into place, and that action will cause the rest of her right hand to become inflamed. AR 53-54, 62 (clarifying that problems concern right, not left, hand), 64.

Each of those alleged errors is relevant to the proper RFC formulation. *See Bray*, 554 F.3d at 1226 (explaining that a challenge to RFC included challenges to "predicate findings"); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (explaining that the RFC "should be exactly the same regardless of whether certain impairments are considered 'severe' or not" at step two (emphasis omitted)). The Court finds that further evidence is required to address whether a right middle trigger finger limitation is required in the RFC—and if so, what that limitation should be, and what jobs Plaintiff may perform. Accordingly, this Court remands for further proceedings, including at minimum obtaining additional daily activities statements from Plaintiff and explicit credibility findings by the ALJ as to the right middle trigger finger condition.

### i.  Background

Plaintiff's manipulative limitations have been somewhat unclear. Plaintiff stated she has had little finger triggering on her right hand since 1999 which "has progressively worsened," AR 476; she cited the inability to bend one of her fingers "all the way" as the only hand-related reason she did not return to work after February 2016, AR 25, 662 (August 7, 2018 assessment);

PAGE 15 – OPINION AND ORDER

she only complained of a tremor in her hands that affected her writing to Dr. Webster in June 2016, AR 461-66; and she allegedly had an accident with her dog in July 2016 which contributed to triggering in her right middle finger as well, AR 117, 395, 445, 476-77.[6] Plaintiff also had right hand carpal tunnel syndrome, which resolved after a surgery in November 2016. AR 489-90. Plaintiff had surgery on her left hand in August 2018. AR 646-47. In this appeal, she raises arguments relating to her right middle trigger finger only.

After the dog incident, Plaintiff's physicians noted that for more than five months, Plaintiff was "[a]ble to make a full fist and fully extend her fingers." AR 481-82, 621-22 (October 31, 2016), 489-90, 618-19 (December 1, 2016 right hand evaluation post-carpal tunnel surgery). However, Dr. Kretzler's treatment records reflect one day in January 2017 where Plaintiff was unable to make a fist. AR 491-92, 615-16 (January 18, 2017). That same day, Plaintiff received an injection for trigger fingers, which was initially effective in relieving symptoms. AR 18, 491-93. In July 2017, Plaintiff reported to Dr. Kretzler that the injection had only been effective for one month in relieving symptoms; she did not report this in the intervening five months. AR 493-94 (July 7, 2017 evaluation). Dr. Kretzler recommended an A1 pulley release. AR 494. On August 3, 2017, Plaintiff was informed that right middle trigger release surgery was denied by OMAP. AR 649. On April 4, 2018, another physician, Dr. Dung Nguyen, noted that Plaintiff could not fully flex her right third digit. AR 538; *see also* AR 593-94 (Dr. Kretzler's May 18, 2018 evaluation). On May 21, 2018, Dr. Kretzler requested coverage of a procedure for right middle trigger finger, but this request was denied. AR 640-41 (letter received July 2, 2018).

---

[6] Plaintiff's initial application was denied on July 19, 2016. AR 109-111. Plaintiff requested reconsideration of her initial denial of benefits on August 1, 2016. AR 114.

On October 4, 2018, Dr. Ketzler provided a medical opinion at Plaintiff's counsel's request. AR 671-78. Dr. Ketzler explained that Plaintiff had trigger fingers with a "good" prognosis. AR 672. Dr. Ketzler answered the question, "Have your patient's impairments lasted or can they be expected to last at least twelve months?" in the negative, and wrote by hand, "No restrictions based on hand diagnoses." *Id*. Dr. Ketzler also explicitly answered that Plaintiff's handling (gross manipulation), fingering (fine manipulation), and feeling would *not* be affected by the impairments at issue. AR 675. Dr. Kretzler wrote in an attached short letter that Plaintiff "continues to be somewhat symptomatic with trigger fingers which results in mild limitation of function of her hand." AR 678. Plaintiff focuses on Dr. Kretzler's short accompanying letter, arguing that Dr. Kretzler "wrote this attached letter" to "amend and clarify his other statements given in [his October 4, 2018 opinion]." ECF 17 at 3. Plaintiff states that there is "no indication that the ALJ reviewed this portion of Dr. Kretzler's opinion." *Id*. Plaintiff also argues that the ALJ did not consider the medical records from after the January 2017 injection, nor Plaintiff's October 2018 hearing testimony. *See* ECF 13 at 12-13, 16.

### ii. Analysis

This Court finds that the ALJ did not err in his reasonable analysis of Dr. Kretzler's October 2018 treating source opinion, which explicitly stated multiple times that Plaintiff had zero manipulative functional limitations based on her hand diagnoses. However, the ALJ did err in not addressing post-January 2017 medical records, which appear significant and probative on the issue of Plaintiff's right middle trigger finger condition. The ALJ also erred in not addressing or making credibility findings regarding Plaintiff's right middle trigger finger hearing testimony. Because the record is ambiguous, and because Plaintiff suggests that pre-July 2016 evidence (including Plaintiff's daily activities report, which was completed in April 2016) is irrelevant on

this issue, ECF 13 at 16, further development of the record is necessary to address whether an RFC limitation based on Plaintiff's right middle trigger fingers is warranted.

The ALJ engaged in a thorough discussion of Dr. Kretzler's October 4, 2018 treating source opinion and effectively adopted it. *See* AR 27-28 (ALJ discussion of Dr. Ketzler's opinion). While Plaintiff argues that a single sentence in Dr. Kretzler's short letter "amend[s] and clarif[ies] his other statements," ECF 17 at 3, this Court is unpersuaded that this sentence detracts from Dr. Kretzler's explicit and forceful statements that Plaintiff's hand limitations have not and would not last at least twelve months, had a good prognosis, would not result in any restrictions, and would not affect Plaintiff's handling, fingering, or feeling. AR 671-78. The ALJ's interpretation of the full report was certainly reasonable. To the extent Dr. Kretzler found Plaintiff was "somewhat symptomatic" and therefore had "mild limitation of function of her hand," AR 678, he did not believe that limitation would affect Plaintiff's ability to do handling, fingering, or feeling, AR 675. He also stated that her impairments have not and would not be expected to last twelve months, and wrote by hand, "No restrictions based on hand diagnoses." AR 672.

Plaintiff's counsel likely sent this form to Dr. Kretzler for the very purpose of obtaining the treating physician's opinion of Plaintiff's history of hand-related issues in the language of Social Security regulations. The ALJ did not err by failing to explicitly consider Dr. Kretzler's supplemental letter in determining Plaintiff's RFC, as this evidence was not significant or probative in light of the entire questionnaire. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (affirming the ALJ's disability determination on the grounds that the ALJ's interpretation of the medical evidence was reasonable and none of the evidence that the ALJ ignored without explanation was significant or probative); *Wallis v. Colvin*, 608 F. App'x 489,

490 (9th Cir. 2015) (rejecting Plaintiff's argument that the ALJ did not properly evaluate the medical evidence on the grounds that none of the evidence that the ALJ failed to specifically discuss was significant or probative).

Plaintiff concedes through her argument that reliance on Dr. Kretzler's October 2018 opinion is warranted. Dr. Kretzler was also a treating source, and those opinions are generally afforded more weight. *See also Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (explaining that if a treating physician's medical opinion is not inconsistent with other substantial evidence in the record, and is supported by medically acceptable clinical findings, the treating physician's opinion is given controlling weight); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Further, Dr. Kretzler's October 2018 opinion was very recent. *See* AR 30 (ALJ decision dated December 31, 2018); *cf. Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (explaining that when a claimant's condition is progressively deteriorating, the most recent medical report is the most probative).

While this Court finds that the ALJ's analysis of Dr. Kretzler's opinion was reasonable and, given Plaintiff's agreement that it is entitled to great weight, not erroneous, this Court finds that the ALJ *did* err in not considering post-January 2017 right middle trigger finger medical records or Plaintiff's hearing testimony regarding the same condition. This Court finds that the later medical records are significant and probative. Because this Court remands for further proceedings on the right middle trigger finger issue, it directs the ALJ to explicitly consider and make findings regarding post-January 2017 medical evidence in making his RFC determination.

An RFC must also reflect a proper analysis of a plaintiff's symptom testimony and credibility. Here, Plaintiff points to hearing testimony relating to Plaintiff's right middle trigger finger that the ALJ did not explicitly address. This was error. Because the existing record does

not make the disability determination clear, further proceedings are necessary to develop a sufficient record. *Varney v. Sec'y of Health & Hum. Servs.*, 859 F.2d 1396, 1400 (9th Cir. 1988).

Indeed, further proceedings on this issue are critical. Plaintiff essentially argues that her daily activities statements, which were completed in April 2016, are irrelevant as to the right middle trigger finger issue because those issues began in July 2016. ECF 13 at 16. At the same time, Plaintiff's treating physician explicitly stated in October 2018 that Plaintiff had "mild" limitations that resulted in zero functional restrictions, and Plaintiff agrees that opinion should be given great weight. The VE testified that someone limited to, among other restrictions, occasional handling and fingering with the dominant extremity (right hand) could not do Plaintiff's past work. ECF 17 at 6. But no medical professionals assigned such a handling-and-fingering limitation to Plaintiff.[7] Additionally, Plaintiff's history of right hand statements may potentially bear on Plaintiff's credibility regarding the trigger finger condition. *See, e.g.,* AR 116 (Plaintiff's request for reconsideration statement that "[m]y hands shake all the time. The majority of the time I am unable to write."); AR 465 (Dr. Webster diagnoses stating "Intermittent tremor in her hands. She filled out the questionnaire and looking at it, there is minimal evidence that she has a tremor. It is well written and the penmanship is excellent.").

As such, this Court reverses and remands for further proceedings on the issue of Plaintiff's right middle trigger finger condition. The ALJ should obtain new evidence concerning Plaintiff's daily activities,[8] as well as any other evidence he or she deems appropriate, and

---

[7] Further, the VE testified that an individual limited to *both* (1) superficial contact with the general public and (2) occasional handling and fingering would not be able to perform Plaintiff's past work. AR 72-73. The VE also testified that there would be no transferrable skills for other jobs for an individual subject to *both* those limitations. AR 73.

[8] This Court does not necessarily agree with Plaintiff's contention that the April 2016 daily activities report is irrelevant as to Plaintiff's credibility. But the Court finds that it would be helpful for the ALJ to obtain later daily activities evidence, and also to explicitly address whether

explicitly address all significant and probative evidence and Plaintiff's symptom testimony

concerning the right middle trigger finger condition. *Cf. Varney*, 859 F.2d at 1400 ("Being

required to remand for that purpose," the ALJ may also have "the opportunity to make specific

findings regarding the claimant's [ ] testimony."). If appropriate, the ALJ should reformulate the

RFC and proceed through the remaining disability steps, including obtaining new VE testimony.

**D. ALJ Did Not Have a Duty to Further Develop the Record Regarding Psychological Report Written by Stephen Meharg, Ph.D.**

Plaintiff argues that the ALJ failed to complete the record by not contacting Dr. Meharg,

a consulting physician, about a mental Consultative Examination ("CE") that he allegedly

completed on July 12, 2016 but did not submit as part of the record.[9] ECF 13 at 2, 13-14; ECF 17

at 3-4; AR 26, 467-68. Plaintiff requests that "[i]f this case is not remanded for benefits and

instead is remanded for further proceedings, then the ALJ should request Dr. Meharg's report to

understand if Dr. Meharg opined any limitations in the area of mental functioning." ECF 13 at

14. On this ground for appeal, Plaintiff focuses on the non-social limitations that may be present

in Dr. Meharg's opinion: any limitation to "simple, routine, repetitive work," or "unskilled

work," AR 13 at 14; limitations regarding the "ability to concentrate, persist, or maintain pace,"

ECF 17 at 4; and issues related to "poor short-term memory," depression, and "getting distracted

easily," *id*.

The ALJ has an independent duty to fully and fairly develop the record. *Smolen v.

Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). However, the duty to further develop the record is

---

the April 2016 report is probative of Plaintiff's credibility with respect to her right middle trigger finger testimony in the first instance.

[9] Dr. Meharg may in fact have completed this CE on July 7, 2016. AR 109; *see also* AR 78-79.

only triggered where "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ's duty "to conduct an appropriate inquiry" is triggered only by "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence" (quotation marks and citations omitted)). "[T]he fact that Plaintiff disagrees with an ALJ's decision to exclude evidence from the record does not trigger a failure to develop the record issue for incompleteness." *April L. v. Comm'r of Soc. Sec.*, No. 3:17-cv-01803-AA, 2019 WL 310122, at \*4 (D. Or. Jan. 22, 2019).

Plaintiff does not demonstrate that the record with respect to mental limitations was ambiguous or inadequate to allow for proper evaluation of the evidence. Therefore, the duty to develop the record was not triggered. The ALJ discussed Plaintiff's depression and mental limitations at length.

**E. ALJ Provided Clear and Convincing Reasons to Reject Plaintiff's Testimony Regarding Other Symptoms.**

The ALJ must provide specific, clear and convincing reasons to reject a claimant's symptom testimony where there is no evidence of malingering. *Smolen*, 80 F.3d at 1280; *accord Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "The ALJ may consider at least the following factors when weighing the claimant's credibility": Plaintiff's reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which Plaintiff complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)). Even if not all of the ALJ's findings for discrediting symptom allegations are

upheld, the overall decision may still be upheld, assuming the ALJ provided other valid rationales. *Batson*, 359 F.3d at 1197.

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). It must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (quotation marks and citation omitted).

Plaintiff argues that the ALJ erred in rejecting Plaintiff's testimony regarding her "ability to stand for up to 5 minutes before she needs to sit down," and her "difficulty lifting, walking, kneeling, squatting, remembering, concentrating, and following instructions." ECF 13 at 15-16. Plaintiff also argues that the ALJ erred by concluding that Plaintiff's prescriptions have effectively controlled her symptoms. ECF 13 at 16-17 (citing AR 24, 25). In her reply brief, Plaintiff argues that the ALJ erred in rejecting Plaintiff's testimony "regarding her manipulative limitations" and in concluding that Plaintiff "can have occasional contact with the general public." ECF 17 at 5.

This Court has already addressed Plaintiff's manipulative limitations testimony above and remands on that issue. The Court finds no harmful error in the ALJ's evaluation of Plaintiff's credibility concerning the other symptom testimony raised in this appeal.

### 1. Difficulty Standing, Lifting, Walking, Kneeling, and Squatting

The ALJ did not err or any error was harmless in rejecting Plaintiff's testimony regarding a severely limited ability to stand and a limited ability to lift, walk, kneel, and squat.

### a. Background

The ALJ found that Plaintiff's answer in her April 2016 self-report that she had "no problem" with dressing or taking a bath contradicted her other symptom statements regarding a limited ability to stand. AR 21 (citing AR 258); *see also* AR 258 (reporting "no problem with personal care" on "personal care" section of self-report which asked how "your illnesses, injuries, or conditions affect your ability to" dress, bathe, care for hair, shave, feed self, use the toilet, or complete "other" tasks). The ALJ also found that Plaintiff's ability to drive a car and go shopping, in stores, by phone, by mail, and by computer, twice a week for groceries or household items was inconsistent with her previous statements that she had difficulty lifting, walking, kneeling, and squatting. AR 21, 259 (April 22, 2016 self-report).

The ALJ also noted that Dr. Webster found that Plaintiff "moved around relatively easily and without any difficulty, getting on and off the exam table or going from a sitting to supine or supine to sitting position. The tremor that she had was intermittent and the shaking that she had in her legs was only when she was standing unsupported by a table." AR 24-25. The ALJ further noted that Dr. Murdock gave Plaintiff an ankle brace, and at a follow-up appointment in September 2018, Plaintiff stated this made her ankle feel better, although the brace was uncomfortable to wear. AR 23 (citing AR 686-89). Dr. Murdock examined Plaintiff's left ankle and found no pain and no limitations to the range of motion. AR 23, 689. The doctor considered Plaintiff to be discharged with good supportive shoes and making good decisions with her activities; she would continue wearing the ankle brace when necessary and would follow up on an as-needed basis. AR 23, 689.

Plaintiff testified at the hearing that she needed to sit after three to five minutes. AR 66. In the same self-report the ALJ cited, Plaintiff went into narrative detail about her limitations in other portions of the questionnaire. She reported that she "cannot stand very long because [her]

PAGE 24 – OPINION AND ORDER

legs start to shake" and that sometimes there is "severe pain when I get up to walk. I have to wait until it cracks and then I can walk. Sometimes it takes a while to go away and I limp." AR 256-63. Plaintiff also explained that her daily activities consist of the following: "Get up and get dressed. Have breakfast. Take pills. Do limited exercises. Do chores with many rest periods. Read newspaper. Get mail. Pay bills. Take the dog out so he can run in the field. I take a chair so I can sit down when my legs start to hurt. Prep for dinner so I don't have to do it all at once." AR 257. Plaintiff stated that she uses a riding lawn mower only and "can do laundry as long as I fold the clothes sitting down." AR 259. She stated that "sometimes I can walk using a cart for about 30 minutes but other times I have to rest every 15 minutes." AR 261; *see also* AR 664 (stating, according to mental health provider, that "[e]ven standing up seems a lot of work").

> ### b.   Analysis

This Court does not find on this record that the ALJ erred. "Even where [ ] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citing *Turner v. Comm'r of Sec. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)). As discussed below, the past jobs that the ALJ concluded Plaintiff can perform require not much, if any, standing, walking, lifting, kneeling, and squatting. Accordingly, even a limited ability to do these activities would likely contradict claims of "totally debilitating impairment." *Id.*; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (explaining "if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working"). On the other hand, "[a]n ALJ may consider inconsistent statements by a claimant in assessing her credibility . . . . A single discrepancy fails, however, to justify the wholesale dismissal of a claimant's testimony." *Popa v.*

*Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017) (as amended) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883-84 (9th Cir. 2006)).

Nevertheless, even if the ALJ erred, any error is harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."). In this appeal, Plaintiff asserts that her testimony demonstrates that "her ankle is always swollen, she is unable to walk up steps, she cannot do running, and she can walk about ½ of a city block before she would need to stop and rest." ECF 13 at 17-18 (citations omitted). Nothing in the record suggests that even with those restrictions, Plaintiff is incapable of performing either, let alone both, of her past relevant jobs.

The ALJ limited Plaintiff to a range of sedentary work, AR 20, and found that Plaintiff could perform two past jobs: security guard and data entry clerk, AR 29-30. The data entry job is sedentary. AR 29. Plaintiff's past security job as performed required thirty minutes of walking, fifteen minutes of standing, and sitting the rest of the time. AR 70-72, 266. Plaintiff testified at the hearing that "[m]ost of [the security guard job] was sitting." AR 58. She explained at the hearing that "of course, if we did the mail, . . . [we would] be at the mail machine, that kind of stuff, take them over to the computer in the hallway. You know, we'd get up and walk over there to do that, set them up. But most of it was sitting. And we had a long extension on the telephone cord, so we could just slide our chairs wherever we had to go . . . ." *Id*. At most, Plaintiff needs to walk to a nearby hallway, and her ability to slide her chair wherever she has to go demonstrates both that the standing and walking was limited and that she does not need to go up steps. The ALJ did not commit harmful error in concluding that Plaintiff can perform two past

jobs that do not require much, if any, standing and walking; no going up steps; and no running. AR 29-30.

As to kneeling or squatting, Plaintiff does not mention in her briefing the significance of these activities except to point out the error. *See* ECF 13 at 14-18; ECF 17 at 4-6. The Court notes that Plaintiff stated in her work history report that neither the data clerk or security guard jobs as performed required *any* climbing, reaching, kneeling, crouching, or crawling. *See* AR 266 (security guard report; providing that there was also no stooping); AR 267 (data clerk; mentioning thirty minutes of stooping, *i.e.*, "[b]end down and forward at waist").

With respect to lifting, the ALJ limited Plaintiff to an RFC including "lifting twenty pounds occasionally, ten pounds frequently; carrying twenty pounds occasionally, ten pounds frequently . . . pushing and pulling as much as lifting and carrying . . . ." AR 20. As explained above in evaluating Dr. Webster's opinion, the RFC error was harmless: the VE testified that Plaintiff could carry out her past security guard job as performed and the clerk job, as performed and per the DOT, even with Dr. Webster's restrictions imposed. AR 71-72; *see also* DOT 203.582-054, 1991 WL 671700 (data clerk job per DOT requires only handling or otherwise moving objects of "up to 10 pounds"). Plaintiff testified that she could lift "[n]ot more than ten pounds." AR 66. Plaintiff also stated that the security guard job as performed required lifting and carrying "less than 10 lbs—about a foot—not often." AR 266.

Accordingly, none of Plaintiff's alleged restrictions on standing, lifting, walking, kneeling, and squatting preclude performance of Plaintiff's past work. This Court is confident based on the record that these limitations would not result in a different disability determination, and therefore concludes any error regarding these limitations is harmless. *Stout*, 454 F.3d at 1056.

### 2.  Difficulty with Remembering, Concentrating, and Following Instructions

Plaintiff argues that the ALJ improperly rejected her statements that she gets distracted easily and can follow instructions only if she keeps rereading them. ECF 13 at 16. The ALJ found that Plaintiff's statements regarding difficulty remembering, concentrating, and following instructions were inconsistent with her ability to: (1) drive a car and shop for groceries or household items in stores, by phone, by mail, and by computer; (2) pay bills, count change, handle a savings account, and use a checkbook; and (3) finish things that she started, such as a conversation, chores, reading, and watching a movie. AR 21 (citing AR 259-61).

Plaintiff argues that her statements in her Function Report that she gets distracted easily and can follow instructions only if she keeps rereading them are not inconsistent with her mental "ability to go shopping twice a week." ECF 13 at 16 (citing AR 261; *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). This Court disagrees with this characterization of the ALJ's analysis. The ALJ specifically identified numerous self-reported activities—including shopping through multiple mechanisms, handling all money-related tasks, and her ability to "finish what [she] starts," such as "a conversation, chores, reading, [and] watching a movie"—which clearly and convincingly contradict Plaintiff's statements regarding remembering, concentrating, and following instructions. AR 259-61. The ALJ did not err in evaluating Plaintiff's testimony.

### 3.  Plaintiff's Prescriptions Effectively Controlled her Symptoms

The ALJ stated, based on his detailed discussion of the record, that Plaintiff's current medications—Venlafaxine, Losartan, Hydrochlorothiazide, Metformin, Amlopidine, Vitamin D3, and Loperamide—have been relatively effective at controlling her symptoms. AR 25 (citing AR 327); *see also* AR 327-28 (October 19, 2018 medications list). Plaintiff argues that the ALJ improperly rejected her testimony, citing Plaintiff's "report[s] that she no longer experienced mental health benefits from taking medication Celexa, and that she started having side effects

from taking Prozac." ECF 13 at 16-17 (citing AR 24); *see also* AR 661-62. However, the

medical record cited by the ALJ makes clear that as of October 19, 2018, the date the ALJ issued

his decision, Plaintiff was no longer taking either Celexa or Prozac, and those medications were

not what the ALJ was referring to. AR 25, 327. Plaintiff does not sufficiently develop this

argument beyond that point. Plaintiff also does not explain how this conclusion by the ALJ

affected his analysis with respect to Plaintiff's symptom testimony. The ALJ supported his

evaluation with substantial evidence, and therefore committed no error on this issue.

### 4.  Plaintiff's Ability to Interact with Others

In her reply brief, Plaintiff argues that the ALJ erred in concluding that Plaintiff can have

"occasional" contact with the general public and contends that Plaintiff must instead be limited

to "superficial" contact.[10] ECF 17 at 5-6 (citing AR 19, 262, 547, 550). This Court finds that the

ALJ did not err; Plaintiff's testimony did not demonstrate that she cannot have even "occasional"

contact with the public. Rather, the ALJ properly incorporated Plaintiff's limitations by finding

that she has a moderate limitation in interacting with others, AR 19, and by including in the RFC

a limitation to occasional public contact as well as to completing tasks "independently, without

the need for coordinated efforts with coworkers." AR 20.

In finding that Plaintiff has a moderate limitation in interacting with others, the ALJ cited

Plaintiff's Activities of Daily Living Form, in which Plaintiff stated that she spends time with

others via texting or talking on the phone; has no problems getting along with family, friends,

and neighbors; and does not like to go out in public. AR 19, 255-63; *see also* AR 56 (Plaintiff's

---

[10] Plaintiff focuses on the adjective "superficial" based on a single question posed by the ALJ to the VE about a hypothetical limitation "to no contact with the general—or superficial contact with the general public, passing people in the hallways would be okay, but no direct contact as part of the job requirements, would either job be available?" AR 72. The VE responded that the data entry job, but not the security guard job, would be available under such a limitation. *Id*.

hearing testimony that she does not "like to go out in public. It's just—it's exhausting"). It was precisely because of portions of the testimony relating to going outside that the ALJ assessed Plaintiff with a "moderate limitation" on interacting with others, while only assessing her with mild limitations in every other area of mental impairment. AR 19-20.

Even if the ALJ's decision is read to imply a rejection of Plaintiff's testimony regarding her ability to interact with the public, the reasons provided by the ALJ—that Plaintiff regularly spent time with others by texting or talking to them on the phone and had no problems interacting with family, friends, and neighbors—would qualify as sufficiently specific, clear, and convincing reasons to reject Plaintiff's claim that her social interaction limitations prevent her from being able to work. Plaintiff's regular social interactions of talking on the phone and texting friends involve a similar level of social interaction as would be required at her previous relevant work as a security guard. Plaintiff testified that the job involved speaking on the phone to report an emergency, calling people her supervisor listed for her, or answering calls from employees calling in sick. AR 58. Plaintiff also testified that aside from interactions over the phone she would probably speak to only about ten to fifteen people during a normal eight-hour shift. AR 70-71. She characterized her contact with the public as "very limited," because she worked weekends and nights. *Id*.

When answering a hypothetical from the ALJ about a sedentary job which would involve speaking on the telephone eight hours a day, five days a week, Plaintiff did not object that she would not be able to tolerate that level of social interaction but rather that the job would too "continuous" if it lasted longer than one hour. AR 59. The record indicates that Plaintiff suffers from anxiety in crowds, AR 550; however, such a limitation would not preclude occasional interactions with the public, such as those involved in her work as a security guard. Because the

PAGE 30 – OPINION AND ORDER

level of social interaction demonstrated by Plaintiff in her daily life are like those that would be required in her past relevant work as a security guard, and because of her testimony, it would be reasonable for an ALJ to conclude that Plaintiff's social interaction limitations would not prevent her from working.[11]

Additionally, the ALJ noted that both Dr. Kaper and Dr. Lewy assessed Plaintiff with only moderate limitations on interacting with the public. *See* AR 28. Indeed, Dr. Lewy found Plaintiff could "manage routine contacts with the public and coworkers." AR 101. The Court has already explained that the ALJ's assessment of Plaintiff's social limitation as moderate, and his RFC limitations, were reasonable interpretations of Dr. Kaper's opinion, including his statement that Plaintiff should be limited to "minimal" contact with coworkers and the public. AR 87. Accordingly, the Court finds that the ALJ's assessment of Plaintiff's social interaction limitations was not an erroneous rejection of Plaintiff's testimony and was supported by substantial evidence.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 30th day of August, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

---

[11] Plaintiff's objection is aimed at the security job role. This Court notes that the VE testified that the data entry job would satisfy limitations to no contact, superficial contact, and occasional contact. AR 71-72.